**In re Ernest and Norma
THOMPSON, Debtors.**

**Bankruptcy No. ED 86–109M.**

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

May 29, 1990.

---

Albert Hanna, El Dorado, Ark., for debtors.

A.L. Tenney, N. Little Rock, Ark., Trustee.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On August 21, 1986, the debtors, Ernest and Norma Jean Thompson filed a voluntary petition for relief under the provisions of chapter 13 of the United States Bankruptcy Code. Hon. Albert R. Hanna (Hanna) prepared the petition and executed it as attorney for the debtors. On May 26, 1987, an order was entered confirming the debtors' chapter 13 plan. The plan provided, generally, for payment in full to holders of secured claims and a 50% dividend to holders of unsecured claims. On November 30, 1987, Hanna filed a motion to withdraw as counsel, which was granted by order entered December 29, 1987.

On August 21, 1989, the Court received a letter from the debtors which stated as follows: [1]

8-14-89

Judge James G. Mixon

Dear Sir

Case # 6-11-0109M

Phone 501-364-7807

This letter is a request, for attorney Albert Hanna 312 East Peach in El Dorado Ark. to be filed on my standing chapter 13. Attorney Hanna was my attorney to put me under the chapter 13. He was my attorney in two other cases one was a car wreck in 85 which we went to Court on in 87. My wife and me signed a home mortgage to him because of money we owed for him representing us. When attorney made out the mortgage after the car accident, he said he would just keep it in his office until after Court. The jury found the defendant not at fault, although he was given a ticket for failing to yield. So when we had to file chapter 13 because of financial problem after the wreck I ask attorney Hanna to put himself on the plan. He said he would. He withdrew himself as our attorney on the accident after I ask him to get us a retrial, but he never would. He also withdrew as our bankruptcy lawyer, even after his fee was paid.

So we don't have a attorney to represent us. I have ask attorney Hanna several times to enter himself on the plan so he can be paid. He has a mortgage on our home at the Ashley County Court House, in Hamburg, Ark. I am sending a copy of the mortgage. He filed all of the other creditors but himself and said he would get his after court.

Thank you sir

The amount owed at that time was $2,400.00

Mr. and Mrs. Ernest Thompson

P.O. Box 154

Crossett, Ark 71635

S.S. # 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

A hearing was conducted on October 30, 1989, to inquire into the debtors' transactions with Hanna, and Hanna appeared although the debtors did not. A subsequent hearing was held pursuant to an order to show cause issued at the request of Hanna to enable him to present further evidence.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O). The Court has jurisdiction to enter a final judgment in the case.

The evidence established that, at the time Hanna filed the petition for the debtors, they were indebted to him for legal work performed prepetition in connection with a criminal matter and a domestic relations

---

**1.** Reproduced with some grammatical errors corrected.

matter. This indebtedness was evidenced by three promissory notes as follows:

(a) Note dated 10/1/85 for the principal sum of $650.00 with interest at the rate of 10% per annum;

(b) Note dated 3/22/85 for the principal sum of $2,500.00 with interest at the rate of 12% per annum; and

(c) Note dated 7/23/86 in the principal sum of $1,571.36 with interest at the rate of 10% per annum.

On July 23, 1986, twenty-nine days before the bankruptcy petition was filed, the debtors executed a mortgage which conveyed a lien on their homestead in favor of Hanna to secure the indebtedness recited above. The debtors testified that Hanna requested the mortgage and promised not to record it. According to the debtors, Hanna stated that he would collect his fees from a personal injury case then pending in state court.

When Hanna prepared the bankruptcy petition and schedules, he falsified the answers to several questions, thereby concealing his status as a creditor and the existence of his recently acquired lien. For instance, the answer to question 12(b) in the statement of affairs falsely reflected that no transfer of real property for purposes of security had occurred within one year of the filing of the petition. Question 15(c) asked: "Have you, either during the year immediately preceding or since the filing of the original petition herein, agreed to pay any money or transfer any property to an attorney at law, or to any other person on is [sic] behalf?" Hanna, on behalf of the debtors, answered "no." Schedule A–1 falsely reflected that the debtors' homestead was subject to only one lien in favor of Farmer's Home Administration for $13,649.31. Hanna's name did not appear on any schedule as a creditor.

The debtors and Hanna had a disagreement in the latter part of 1987 which culminated in Hanna's withdrawing as the debtors' attorney in the bankruptcy case. On December 1, 1987, one day after Hanna filed his motion to withdraw, Hanna caused the mortgage to be recorded with the Ashley County Circuit Clerk.

In 1989, the debtors decided to obtain a loan and "pay [their] bankruptcy off." The amount of the indebtedness to Hanna had become disputed, and Hanna and the debtors agreed on a settlement. In October 1989, the debtors borrowed money secured by a second mortgage on their homestead and paid Hanna $4,500.00. Hanna then released his mortgage lien on the debtors' homestead. As part of the settlement, the debtors also executed a release of Hanna for any liability for malpractice in connection with the state court litigation.

The facts recited above establish that Hanna had an irreconcilable conflict of interest which precluded his representation of the debtors in this bankruptcy case. Model Rule of Professional Conduct 1.7(b) provides as follows:

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation.

Before the petition was filed, Hanna held an unsecured claim, which, if scheduled with the other unsecured creditors, would have entitled him to a 50% dividend under the plan. Hanna was obligated to protect the debtors' interest in discharging 50% of their unsecured debts and obtaining a fresh start, while at the same time he was interested in protecting his own rights as a prepetition creditor with a substantial claim. *See In re Whitman*, 51 B.R. 502, 507 (Bankr.D.Mass.1985).

Since the mortgage held by Hanna was not recorded on the day the petition was filed, the debtors' estate had a cause of action against Hanna under state and bankruptcy law to set aside the unperfected mortgage lien.[2] 11 U.S.C. §§ 544(a)(3) and

---

2. Under Arkansas law, an unrecorded mortgage is binding between the parties and constitutes a

1303. *See In re Boyette,* 33 B.R. 10, 11 (Bankr.N.D.Tex.1983); *In re Hall,* 26 B.R. 10, 10 (Bankr.M.D.Fla.1982). The debtors also had a cause of action under 11 U.S.C. §§ 522(g) and (h) and 547(b) to set aside the lien as a preference. *See Einoder v. Mount Greenwood Bank (In re Einoder),* 55 B.R. 319, 322–24 (Bankr.N.D.Ill.1985). With Hanna, the potential defendant, acting in the role of counsel, it is not surprising that these causes of action were never pursued.

Hanna's actions also directly violated several provisions of the Bankruptcy Code. Causing the mortgage to be recorded violated the automatic stay of 11 U.S.C. § 362(a)(4) and was, therefore, a void act. *See* 2 *Collier on Bankruptcy* ¶ 362.11 (15th ed. 1990); *Funket v. Beacon Consumer Discount Co. (In re Funket),* 27 B.R. 640, 642 (Bankr.M.D.Pa.1982). Hanna's receipt of the $4,500.00 while the case was pending without being authorized by a confirmed plan or by order of the Court violated the automatic stay. *See* 11 U.S.C. § 362(a)(6). The payment to Hanna is avoidable under 11 U.S.C. § 549(a) as an unauthorized transfer of estate property. *See Rafoth v. Smith & Schmidt Associates (In re Swedenborg),* 55 B.R. 820, 823 (Bankr.N.D.Ohio 1985). Hanna's violation of each of these sections created additional causes of action in favor of the debtors' estate which were never pursued.

The compromise agreement regarding the payment of Hanna's disputed fee, to which the debtors agreed, was not a valid compromise because creditors were not given notice as required under Bankruptcy Rule 9019. *See Zerodec Mega Corp. v. Terstep of Texas, Inc. (In re Zerodec Mega Corp.),* 47 B.R. 304, 308–09 (Bankr.E.D. Pa.), *modified,* 60 B.R. 884 (E.D.Pa.1985). The release executed by the debtors requiring them to waive any malpractice claim they possessed in connection with the pre-

petition state court litigation was not valid because there was no evidence that Hanna followed the requirements of Model Rule 1.8(h).[3] Finally, the cause of action for malpractice is property of the estate which cannot be compromised or conveyed without an order of the bankruptcy court after notice and a hearing. *See* Bankruptcy Rules 6007 and 9019; 11 U.S.C. § 554.

The violations of the Bankruptcy Code and Rules of Professional Conduct established above require that sanctions be imposed on Hanna. Therefore, as sanctions for his unethical conduct, Hanna is ordered to forthwith repay to the chapter 13 trustee the $4,500.00 obtained from the debtors in violation of the Bankruptcy Code. Second, a copy of this opinion is referred to the Arkansas Supreme Court's Committee on Professional Conduct with a request that appropriate action be taken against Hanna.

IT IS SO ORDERED.

---

valid lien on the property except as to the legal rights of third parties. *See Cloverleaf Development, Inc. v. Provence,* 273 Ark. 12, 616 S.W.2d 16 (1981).

**3.** Model Rule 1.8(h) provides as follows:

(h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to

a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.