**In re Angelo n/m/n CARPIO, Debtor.**

**Angelo CARPIO, Plaintiff,**

**v.**

**Bonnie SMITH, Reid Smith, J.E. Barnes, Jr., and Nevada Investments, LLC, Defendants.**

**Bankruptcy No. 97–20353–FWK. Adversary No. 97–2022.**

United States Bankruptcy Court, W.D. Missouri.

Oct. 2, 1997.

Gary W. Smith, Sedalia, MO, for Angelo Carpio.

Joel B. Laner, Kansas City, MO, for Nevada Investments, LLC.

Dewey Crepeau, Columbia, MO, for Bonnie M. Smith, Reid Smith, and J.E. Barnes, Jr.

Rick Fink, Chapter 13 Trustee.

### *MEMORANDUM OPINION*

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the complaint to void and set aside the post-petition foreclosure sale of real estate belonging to the debtor, and seeking damages for a willful violation of the automatic stay. A trial was held on July 29, 1997, after which the Court took the matter under advisement and granted the parties additional time to submit post-trial briefs. The Court has read the briefs submitted by the parties, has conducted its own independent research and is now ready to rule. The Court determines that all of the elements of 11 U.S.C. § 549(c) have been satisfied and, therefore, the debtor

cannot recover his real estate from the purchaser. However, the Court will allow the bankruptcy estate to recover the collection fee and all of the costs and expenses of the foreclosure sale that were withheld from the sale proceeds plus interest, and will award the debtor damages, including attorney's fees, costs and punitive damages, for the mortgagee's willful and flagrant violation of the automatic stay.

### Facts

On October 19, 1993, Angelo Carpio and his wife, Lydia Ann Carpio, executed a promissory note in the amount of $47,135.01 in favor of Bonnie M. Smith for the purchase of 143 acres of real property described as:

> The Southeast quarter of the Southeast quarter of Section Twenty-one (21), Township Forty-two (42) North, Range Seventeen (17) West, in Morgan County, Missouri.
>
> ALSO, the Southwest quarter of the Southwest quarter, the Northeast quarter of the Southwest quarter, the West half of the Southeast quarter of the Southwest quarter, and the West eight-five (85) feet of the East half of the Southeast quarter of the Southwest quarter of Section Twenty-two (22), Township Forty-two (42) North, Range Seventeen (17) West, in Morgan County, Missouri.
>
> Subject to all existent easements, and restrictions and reservations of record, if any. (Hereinafter "the Property.")

The promissory note was secured by a deed of trust on the Property entered into between the Carpios, Bonnie Smith, and the trustee, Kevin Schehr. The promissory note provided for interest at the rate often percent per annum and for monthly payments in the amount of $477.83 beginning November 15, 1993, and payable on the 15th day of each month thereafter until the note was paid in full. The deed of trust and promissory note were recorded on March 15, 1994, in the Recorder's Office of Morgan County, Missouri.

In September 1996, Angelo Carpio moved out of the residence located on the Property in connection with the dissolution of his marriage. Carpio continued to make the mortgage payments until November 1996. Thereafter, Carpio ceased making payments because he thought that his wife's parents were going to make the payments on the note. However, the payments were not being made and on February 24, 1997, separate notices were sent to Angelo Carpio and to Lydia Carpio by certified mail from William G. Johnson; who was the attorney representing Bonnie Smith in the foreclosure proceedings, informing them that the successor trustee, J.E. Barnes, Jr., was going to sell the Property on March 18, 1997. Each notice was sent to the street address of the Property. One of the receipts for certified mail purports to have Angelo Carpio's signature, but at trial Angelo Carpio could not say for sure that it was his signature on the receipt.

At some point after the notice of sale was sent by Johnson, Marvin Opie, who is the attorney representing Angelo Carpio in the dissolution proceedings, contacted Johnson concerning the proposed foreclosure sale. On March 7, 1997, Johnson responded by letter to Opie's inquiry and stated that the promissory note could be purchased before the scheduled foreclosure sale for the amount of $50,253.40. That figure included $4500.00 for attorney's fees, $255.60 for the cost of publishing the notice of the foreclosure sale three times, and the amount of $100.00 designated as "O & E."

The foreclosure sale was scheduled to be held at 1:00 p.m. on March 18, 1997. On the morning of March 18, 1997, Carpio contacted the law office of Gary W. Smith to discuss with him the possibility of filing bankruptcy. An emergency quick-file bankruptcy petition under Chapter 13 of the Bankruptcy Code was prepared and Carpio drove to Kansas City, Missouri to personally file the petition before the scheduled foreclosure sale. Carpio was successful in that endeavor. The Chapter 13 petition is file stamped 12:15 p.m. on March 18, 1997. However, neither Smith nor Carpio have ever filed a copy or notice of the bankruptcy petition in the Recorder's Office of Morgan County, Missouri.

At approximately 12:40 p.m. on March 18, 1997, Carpio called Johnson at his office and

told him his name, that he had just filed bankruptcy in Kansas City, Missouri, gave him the bankruptcy case number three times and told him to stop the sale of the Property. At trial, Johnson acknowledged that he talked to Carpio by telephone about fifteen minutes prior to the scheduled foreclosure sale. Johnson explained that he was a little confused at first because he thought it was someone calling to make an appointment to speak to attorney Dewey Crepeau, who was handling bankruptcies in his office, about filing for bankruptcy. When Johnson realized that he was talking to Carpio, he did not believe that Carpio had filed a quick-file bankruptcy petition and told Carpio that he was not going to stop the foreclosure sale. Johnson stated that if Carpio's lawyer had called, he would have believed the lawyer. Johnson testified that he thought it would be best to allow the sale to proceed and that once the sale was out of the way he would then seek to lift the automatic stay. The foreclosure sale proceeded as scheduled. Johnson attended the foreclosure sale, but he did not tell anyone, including the prospective bidders or Opie, who was attending the sale, that he had talked to Carpio or that Carpio claimed to have filed bankruptcy. After the sale, Johnson conducted no investigation and, surprisingly, never even called the bankruptcy court to find out if Carpio had indeed filed for bankruptcy protection. Since the foreclosure sale neither Johnson nor Bonnie Smith through other counsel have taken any action seeking retroactive relief from the automatic stay.

Nevada Investments, LLC ("Nevada") purchased the Property at the foreclosure sale for the sum of $52,000.00. There is absolutely no evidence that Nevada had knowledge of Carpio's bankruptcy filing prior to the foreclosure sale or prior to recording the Trustee's Deed Under Sale in the Recorder's Office of Morgan County, Missouri on March 25, 1997. Nevada first learned of Carpio's bankruptcy filing when it was served with the complaint in this adversary proceeding.

Johnson retained $4500.00 of the sale proceeds as his collection fee. After payment of the promissory note and other expenses, there was a surplus in the amount of $927.96 that Johnson sent to the Clerk of the Circuit Court of Morgan County to be held by the Clerk pending distribution in the Carpios' dissolution proceedings.

Nevada presented evidence through a real estate appraiser, Jesse E. Bagby, that the fair market value of the Property was $46,-500.00 as of July 9, 1997. The only other evidence concerning value was Carpio's testimony that an individual, identified as Zac Zaremba in Carpio's interrogatory answer number nine, offered to buy the Property in March 1996 for $1000.00 per acre for a total purchase price of $143,000.00. No other evidence of value was offered by Carpio at trial. The Court finds Bagby's appraisal to be the more credible evidence of value and finds that the Property was worth $46,500.00 on the date of the foreclosure sale.

On May 5, 1997, Angelo Carpio filed a two count complaint against Bonnie Smith; Reid Smith, who is Bonnie Smith's son; J.E. Barnes, Jr.; and Nevada. In Count I Carpio requests that the Court void and set aside the foreclosure sale of the Property because the sale occurred in violation of the automatic stay. In Count II Carpio seeks an award of damages for the defendants' willful violation of the automatic stay. Although Lydia Carpio may have had an interest in the Property at the time of the foreclosure sale, she has not sought to intervene in this adversary proceeding. At the close of Carpio's evidence, the Court dismissed Reid Smith from both counts of the complaint because he was not a party to the promissory note or deed of trust, and dismissed Barnes from Count 11 because there was absolutely no evidence that he had any knowledge of Carpio's bankruptcy filing prior to holding the foreclosure sale.[1]

---

1. In the post-trial brief filed by Bonnie Smith, her counsel, who also represented Reid Smith and J.E. Barnes, Jr., mistakenly asserts that the Court dismissed both Reid Smith and J.E. Barnes, Jr. from both counts of the complaint. However, the Court's notes reflect, and the tape recording of the trial confirms, that the Court did not dismiss J.E. Barnes, Jr. from Count I of the complaint.

The remaining defendants contend that the automatic stay is not applicable here and the Court cannot set aside the sale of the Property because all of the elements of 11 U.S.C. § 549(c) have been satisfied. Smith and Nevada further assert that the Court cannot assess damages against either of them for a willful violation of the automatic stay because neither of them had actual knowledge of Carpio's bankruptcy filing prior to the foreclosure sale.

*Discussion*

Section 362(a)(3) of the Bankruptcy Code provides that a petition filed in bankruptcy "operates as a stay, applicable to all entities, of ... any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). In *In re Eugene L. Pieper, P.C.*, 202 B.R. 294, 297 (Bankr.D.Neb.1996), the bankruptcy court opined:

> The automatic stay is broad in scope and applies to almost every formal and informal action against the debtor or property of the debtor, except as set forth under (b) of Section 362. 2 LAWRENCE P. KING, ET AL., COLLIER ON BANKRUPTCY ¶ 362.04, at 362–34 (15th ed.1996).

> > The purpose of the automatic stay is to give the debtor a breathing spell from his creditors in which he may attempt a repayment or reorganization plan.... The automatic stay also protects creditors by averting a scramble for the debtor's assets and promoting instead an orderly liquidation procedure under which all creditors are treated equally.

> *Farley v. Henson*, 2 F.3d 273, 274 (8th Cir.1993).

This Court has repeatedly opined that actions taken in violation of the automatic stay are void. *See In re Burke*, 147 B.R. 955, 959 (Bankr.W.D.Mo.1992); *In re St. Louis South Park II Inc.*, 111 B.R. 260, 264 (Bankr. W.D.Mo.1990); *In re Swift*, 85 B.R. 96, 97 (Bankr.W.D.Mo.1988). Specifically, this Court has observed that "a foreclosure which takes place some 30 minutes after the filing of a petition for relief would normally be void

because of the violation of the automatic stay." *Swift*, 85 B.R. at 97.

Other decisions by bankruptcy courts and district courts within the Eighth Circuit reflect agreement that an act done in violation of the automatic stay is void ab initio. *See Eugene L. Pieper*, 202 B.R. at 298; *In re United Imports Corp.*, 200 B.R. 234 (Bankr. D.Neb.1996); *Riley v. United States*, 192 B.R. 727 (E.D.Mo.1995), *rev'd on other grounds*, 118 F.3d 1220 (8th Cir.1997); *In re Molitor*, 183 B.R. 547 (Bankr.E.D.Ark.1995); *In re National Cattle Congress, Inc.*, 179 B.R. 588 (Bankr.N.D.Iowa 1995), *remanded on other grounds*, 91 F.3d 1113 (8th Cir. 1996), *In re Rhodes*, 147 B.R. 492 (Bankr. W.D.Ark.1992), *aff'd*, 155 B.R. 491 (W.D.Ark. 1993); *Olson v. United States*, 133 B.R. 1016 (D.Neb.1991), *aff'd*, 4 F.3d 562 (8th Cir.1993); *In re Apex Oil Co.*, 131 B.R. 712 (E.D.Mo. 1991); *In re Nelson*, 123 B.R. 993 (Bankr. D.S.D.1991), *vacated on other grounds*, 143 B.R. 722 (D.S.D.1991); *In re Apex Oil Co.*, 122 B.R. 559 (Bankr.E.D.Mo.1990), *aff'd in part and rev'd in part on other grounds*, 131 B.R. 712 (E.D.Mo.1991); *In re Thompson*, 116 B.R. 679 (Bankr.W.D.Ark.1990), *In re Rose*, 113 B.R. 534 (W.D.Mo.1990); *Fields v. Demint*, 107 B.R. 194 (W.D.Mo.1989); *In re Benefield*, 102 B.R. 157 (Bankr.E.D.Ark. 1989); *In re Olson*, 101 B.R. 134 (Bankr. D.Neb.1989), *aff'd*, 133 B.R. 1016 (D.Neb. 1991); *In re Reserves Dev. Corp.*, 78 B.R. 951 (W.D.Mo.1986); *In re Henstra*, 75 B.R. 260 (Bankr.D.Minn.1986); *In re Tanksley*, 70 B.R. 429 (Bankr.E.D.Mo.1987); *In re Pester Refining Co.*, 58 B.R. 189 (Bankr.S.D.Iowa 1985); *In re American Central Airlines Inc.*, 52 B.R. 567 (Bankr.N.D.Iowa 1985); *In re Lassiter*, 42 B.R. 631 (Bankr.E.D.Mo.1984); *In re O'Connor*, 42 B.R. 390 (Bankr.E.D.Ark. 1984); *In re Rath Packing Co.*, 35 B.R. 615 (Bankr.N.D.Iowa 1983); *In re Joe DeLisi Fruit Co.*, 11 B.R. 694 (Bankr.D.Minn.1981).

In two reported decisions the bankruptcy courts described an action violating the automatic stay as "null" or a "nullity." *See In re Claussen*, 118 B.R. 1009 (Bankr.D.S.D.1990); *Landmark v. Schaefbauer*, 41 B.R. 766 (Bankr.D.Minn.1984).

On the other hand, other decisions by bankruptcy courts within this circuit show

that some courts feel that actions taken in violation of the automatic stay are not void, but merely voidable. *See In re Profile Sys. Inc.*, 193 B.R. 507 (Bankr.D.Minn.1996); *In re Croce*, 190 B.R. 106 (Bankr.D.Minn. 1995),*In re Kampen*, 190 B.R. 99 (Bankr. N.D.Iowa 1995), *In re Dale*, 152 B.R. 573 (Bankr.D.Minn.1993), *In re Gibson*, 149 B.R. 562 (Bankr.D.Minn.1993), *In re Bukowski*, 109 B.R. 932 (Bankr.D.Minn.1990), *In re Germer*, 107 B.R. 217 (Bankr.D.Neb.1989), *In re Sapp*, 91 B.R. 520 (Bankr.E.D.Mo. 1988), *In re Oliver*, 38 B.R. 245 (Bankr. D.Minn.1984)

In other decisions, the position adopted is that an act in violation of the automatic stay is void or at least voidable. *See In re Deppe*, 110 B.R. 898 (Bankr.D.Minn.1990); *In re Anderson*, 62 B.R. 448 (Bankr.D.Minn.1986).

In two reported decisions the bankruptcy courts would only commit to stating that actions taken in violation of the automatic stay are "at least voidable." *See In re Just Brakes Corporate Sys., Inc.*, 175 B.R. 288, 291 (Bankr.E.D.Mo.1994), *rev'd on other grounds*, 108 F.3d 881 (8th Cir.1997); *In re Victoria Grain Co. of Minneapolis*, 45 B.R. 2, 7 (Bankr.D.Minn.1984).

Yet another bankruptcy court in this circuit, as voiced in three published opinions, considers an action taken in violation of the automatic stay to be invalid or voidable. *See In re Hutchins*, 211 B.R. 325 (Bankr. E.D.Ark.1997); *In re Pulley*, 196 B.R. 502 (Bankr.W.D.Ark.1996); *In re Reichenbach*, 174 B.R. 997 (Bankr.E.D.Ark.1994).

Finally, one bankruptcy court in this circuit has not taken a definitive stand one way or the other, but recognizes that even if an action in violation of the automatic stay is considered void, equitable considerations may be applied to mitigate the affect of the violation. *See In re Tant*, 156 B.R. 1018 (Bankr.W.D.Mo.1993), *In re Bain*, 143 B.R. 715 (Bankr.W.D.Mo.1992).

In *Kalb v. Feuerstein*, 308 U.S. 433, 438, 60 S.Ct. 343, 345–46, 84 L.Ed. 370 (1940), the United States Supreme Court examined the issue under the former Bankruptcy Act and held that actions in violation of the automatic stay are void. The circuit courts that have addressed this issue in the context of the Bankruptcy Code are split. The minority position that an act in violation of the automatic stay is not void, but merely voidable is held by the Fifth Circuit and the Federal Circuit. *See Bronson v. United States*, 46 F.3d 1573 (Fed.Cir.1995); *Picco v. Global Marine Drilling Co.*, 900 F.2d 846 (5th Cir. 1990). The majority of the circuits hold that an action in violation of the automatic stay is void ab initio. *See In re Soares*, 107 F.3d 969 (1st Cir.1997); *Constitution Bank v. Tubbs*, 68 F.3d 685 (3d Cir.1995); *Parker v. Bain*, 68 F.3d 1131 (9th Cir.1995); *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020 (10th Cir.1994); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522 (2d Cir.1994); *In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984); *Matthews v. Rosene*, 739 F.2d 249 (7th Cir.1984). In the Sixth Circuit, the law is not quite so clear. While two panels of the Sixth Circuit have held that actions in violation of the automatic stay are void, *In re Smith*, 876 F.2d 524 (6th Cir.1989); *National Labor Relations Bd. v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6th Cir.1986); one panel has held that acts violating the automatic stay are invalid and voidable, *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905 (6th Cir.1993).[2] The First Circuit recognizes that although actions taken in derogation of the automatic stay are void, equitable considerations may alter the outcome of a stay violation. *See Soares*, 107 F.3d at 976.

The Eighth Circuit has not addressed this issue and in a recent opinion expressly declined to do so. *See Riley v. United States*, 118 F.3d 1220, 1222 n. 1 (8th Cir.1997).

■■■ This Court sees no reason to depart from its previous position that actions taken in violation of the automatic stay are void ab initio. Ordinarily, at least for this Court, and many others, in the absence of any equitable considerations, that would be the end of the analysis and the foreclosure sale that is the subject of this opinion would be voided and set aside because it occurred in violation of the automatic stay. However, in this case

---

**2.** The circuit judge who wrote the *Smith* opinion also wrote the *Easley* opinion.

the defendants have raised the defense of 11 U.S.C. § 549(c). Section 549 of the Bankruptcy Code addresses post-petition transactions and states in relevant part:

(a) Except as provided in subsection ... (c) of this section, the trustee may avoid a transfer of property of the estate ... that occurs after the commencement of the case ... that is not authorized under this title or by the court.

....

(c) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

11 U.S.C. § 549(a) and (c).

In *In re Hill,* 156 B.R. 998, 1007 (Bankr. N.D.Ill.1993), the bankruptcy court explained that:

Pursuant to section 549(c), a trustee may not avoid transfers of realty to good faith purchasers for present fair equivalent value and without knowledge of the commencement of the bankruptcy case, if a copy or notice of the petition has not been filed in an appropriate recording office where the property is located. Good faith purchasers of the estate's real property, without knowledge of the case, who have given less than present fair equivalent value before a copy of the petition has been filed, will not be protected other than to the extent of a lien for any present value given.

In *Hill* the court also expressed the opinion that "[s]ection 549(c) is an exception to section 362 regardless of whether violations of the automatic stay are void or voidable." *Hill,* 156 B.R. at 1007. This view is shared by several courts. *See In re Schwartz,* 954 F.2d 569 (9th Cir.1992); *In re Taylor,* 884 F.2d 478 (9th Cir.1989); *In re D'Alfonso,* 211 B.R. 508 (Bankr.E.D.Pa.1997); *In re Bago,* 149 B.R. 610 (Bankr.C.D.Cal.1993); *In re Bryant,* 103 B.R. 95 (Bankr.E.D.Pa.1989); *In re Purnell,* 92 B.R. 625 (Bankr.E.D.Pa.1988); *In re Wingo,* 89 B.R. 54 (9th Cir. BAP 1988); *In re King,* 35 B.R. 530 (Bankr.N.D.Ga.1983); *In re Fuel Oil Supply and Terminaling, Inc.,* 30 B.R. 360 (Bankr.N.D.Tex.1983). "[S]ubsection 549(c)'s protection of good faith purchasers carves out an extremely specific and narrow exception to the automatic stay when section 362 overlaps subsection 549(c)." *Schwartz,* 954 F.2d at 574. "[S]ection 549(c) is intended to protect good faith purchasers where the sale would otherwise be subject to avoidance under section 549 or void under section 362." *Hill,* 156 B.R. at 1007–1008.

There is a contrary position on this issue. In *In re Servico, Inc.,* 144 B.R. 933 (Bankr. S.D.Fla.1992), the bankruptcy court determined that because all acts in violation of the automatic stay are void, section 549(c) could not be used by a good faith purchaser to limit the reach of section 362. According to the court:

[Section 549(c)] purchasers may seek, and might qualify for, § 362(d) annulment in which case the transfer would not be set aside as a violation of the automatic stay. This Court is aware that if the automatic stay is annulled in cases where the purchaser fits within § 549(c), it will have reached the same result as if such transfers were initially declared not void. However, this is not a distinction without a difference. By holding all acts in violation of the automatic stay to be void, but considering § 362(d) annulment of the stay as to certain purchasers, the burden of bringing an action to characterize the transfer has shifted to the purchaser and the purposes of the automatic stay ... are implemented.

*Servico,* 144 B.R. at 936–37.

▪ Under the reasoning of *Servico* a good faith purchaser has no defense under

section 549(c) if the trustee or the debtor attempts to void a post-petition sale of real estate as a violation of the automatic stay. This Court believes that the *Servico* ruling is too narrow and that the more correct approach is that a post-petition transfer of real estate is excepted from the application of the automatic stay when the purchaser satisfies the elements of section 549(c). Following the post-petition transaction, the purchaser certainly may adopt a proactive position by filing a motion under section 362(d) seeking to annul the automatic stay. However, this Court believes that section 549(c) should be available as a defense in an action brought by the trustee or the debtor against the purchaser seeking to void and set aside the transfer of real estate as a violation of the automatic stay.

Here, the burden is upon Nevada to show that it has satisfied all of the elements of section 549(c). *See In re Auxano, Inc.,* 96 B.R. 957, 961 (Bankr.W.D.Mo.1989). The Court determines that Nevada has met its burden. Carpio presented no evidence at trial which showed that Nevada was acting in anything but good faith when it purchased the Property at the foreclosure sale. *See id.* Daniel Quinn, who is a member of Nevada, which is located in Overland Park, Kansas, testified that he was notified of the potential foreclosure sale of the Property by a local realtor. In the fall of 1996, Nevada had purchased real estate adjacent to the Carpios' property and, consequently, Nevada became interested in purchasing the Carpios' property when it learned of the foreclosure sale. When Quinn went to inspect the Property, he was greeted by Lydia Carpio, who was holding a rifle. Needless to say the inspection was terminated forthwith. Barnes testified that there were two bidders at the sale. Quinn stated that each bidder submitted two or three bids each. The Court finds that the foreclosure sale of the Property " ' carries the earmarks of an arms-length bargain' under the circumstances." *See id.*

The evidence was uncontroverted that Nevada had absolutely no knowledge, either actual or constructive, that Carpio had filed for bankruptcy protection until it was served with the complaint in this adversary proceed-

ing. *See id.* Further, the evidence shows that Nevada paid more for the Property than its appraised value. Nevada has satisfied the elements of lack of knowledge and present fair equivalent value. Finally, a copy or notice of Carpio's bankruptcy petition has never been filed in the Recorder's Office of Morgan County, Missouri. Because Nevada has shown that it has satisfied all of the elements of section 549(c), the Court will not void and set aside the transfer of the Property to Nevada.

■ However, since the Court holds that the sale was void except for the 11 U.S.C. § 549(c) exception, the Court believes that it is appropriate that Carpio's bankruptcy estate recover the $4500.00 collection fee retained by Johnson out of the sale proceeds along with any sums withheld from the sale proceeds by either Johnson or Barnes that were used for the payment of costs or any other expenses associated with the foreclosure sale. In the absence of the application of section 549(c), the Court would void and set aside the foreclosure sale that occurred here. Only the purchaser of the real estate, Nevada in this case, is protected under section 549(c). No one else in this case who was involved in the sale of the Property may seek shelter under its umbrella. The Court will direct Johnson and Barnes to remit any sums withheld by either of them from the sale proceeds to the Chapter 13 Trustee, along with the Missouri statutory rate of interest from the date of the foreclosure sale until the date the funds are remitted to the Chapter 13 Trustee. The Court will direct Johnson and Barnes to remit such sums within twenty days of the date this opinion is filed.

■ Another ground exists for the recovery by the bankruptcy estate of the collection fee and costs of the foreclosure sale plus interest, and an award to Carpio of the attorney's fees and costs expended by him in the prosecution of this adversary proceeding along with punitive damages. Pursuant to section 362(h) "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). "A violation

of the stay is willful if 'the creditor acts deliberately with knowledge of the bankruptcy petition.'" *Burke,* 147 B.R. at 958 (quoting *Knaus v. Concordia Lumber Co., Inc. (In re Knaus),* 889 F.2d 773, 775 (8th Cir.1989)). In order to secure the important protections afforded by the automatic stay, "courts must display a certain rigor in reacting to violations of the automatic stay." *Soares,* 107 F.3d at 975–76.

■ In this case, there is no question that Bonnie Smith's counsel, William Johnson, knew of Carpio's bankruptcy filing prior to the foreclosure sale. "Under Missouri law, the attorney-client relationship is an agency relationship governed by the same rules which apply to other agencies." *Southwestern Bell Tel. Co. v. Roussin,* 534 S.W.2d 273, 276 (Mo.App.1976). The attorney "is in the proceeding as the representative and alter-ego of his clients. His acts and appearances are those of his clients and are regarded as having been done by, and binding on, the clients." *State ex rel. A.M.T. v. Weinstein,* 411 S.W.2d 267, 272 (Mo.App.1967). "The general rule is that notice to an agent while acting within the scope of his authority and with regard to any business over which his authority reaches, is notice to, or knowledge of the principal." *State v. Pinson,* 717 S.W.2d 266, 269 (Mo.App.1986). Even though Bonnie Smith had no actual knowledge of Carpio's bankruptcy filing, her counsel's actual knowledge of Carpio's bankruptcy filing and his decision to proceed with the foreclosure sale in spite of his knowledge that Carpio had filed for bankruptcy protection is imputable to her. Bonnie Smith, through the actions of her counsel, willfully violated the automatic stay. The Court determines that Bonnie Smith is liable to Angelo Carpio's bankruptcy estate for the $4500.00 collection fee retained by Johnson and for any additional costs and expenses withheld from the sale proceeds by either Johnson or Barnes, along with the Missouri statutory rate of interest from the date of the foreclosure sale until the date she remits the foregoing sums to the Chapter 13 Trustee. The Court recognizes that the bankruptcy estate is not entitled to a double recovery for the $4500.00 collection fee and the other costs and expenses of the foreclosure sale

that were withheld from the sale proceeds plus the accrued interest. Bonnie Smith will only be responsible for remitting these sums to the Chapter 13 Trustee in the event either Johnson or Barnes fail to remit same within twenty days of the date this opinion is filed.

Carpio has filed an application for attorney's fees for the prosecution of this action in the amount of $750.00. The Court finds the sum of $750.00 to be a reasonable fee. The Court determines that Bonnie Smith is liable to Angelo Carpio in the amount of $750.00 for attorney's fees plus the costs incurred by Carpio in the prosecution of this action and will direct that she remit the attorney's fees and costs directly to counsel for Carpio, Gary W. Smith, within twenty days of the date this opinion is filed.

■ "In 'appropriate circumstances,' under § 362(h) the Court may assess punitive damages in addition to actual damages." *Burke,* 147 B.R. at 959. "A finding of appropriate circumstances sufficient to support an award of punitive damages under § 362(h) requires 'egregious, intentional misconduct on the violator's part.'" *Id.* (quoting *United States v. Ketelsen (In re Ketelsen),* 880 F.2d 990, 993 (8th Cir.1989)). The Court determines that such "egregious, intentional misconduct" has been shown here. After Carpio notified Johnson that he had filed for bankruptcy relief, Johnson determined to go ahead with the sale and then later seek to lift the automatic stay. However, Johnson conducted absolutely no follow-up investigation after the sale, even though Carpio had given Johnson the case number of his bankruptcy filing, and Johnson has never attempted to lift the automatic stay. Once again, Johnson's actions are imputable to Bonnie Smith. Further, Bonnie Smith through other counsel has never taken any action seeking relief from the automatic stay. The Court determines that punitive damages are proper in this case as punishment for the willful and flagrant violation of the automatic stay. However, Carpio's bankruptcy counsel could very well have tempered the situation by simply filing a copy or notice of Carpio's bankruptcy petition in the Recorder's Office of Morgan County, Missouri, therefore, the

Court determines that punitive damages in the amount of $1000.00 are appropriate here. The Court will direct Bonnie Smith to remit the sum of $1000.00 for punitive damages to Angelo Carpio within twenty days of the date this opinion is filed.

The Court will direct the Chapter 13 Trustee to deposit the sums remitted to him by either Johnson, Barnes or Smith in an interest bearing account and hold these sums for a period of at least ninety days from the date the sums are received by the Chapter 13 Trustee. At the expiration of the ninety-day period, the Chapter 13 Trustee shall apply to this Court for permission to distribute the sums remitted to the Chapter 13 Trustee, less the Chapter 13 Trustee's fee, to the creditors of Angelo Carpio. The Court will review the file and determine if such distribution would be appropriate at that time.

■ Once again, there is no evidence that Nevada had any knowledge of Carpio's bankruptcy filing prior to the foreclosure sale. The Court denies any relief against Nevada under section 362(h).

The Court noted above that even though Lydia Carpio may have had an interest in the Property, she has made no attempt to intervene in this action. Be that as it may, Lydia Carpio still may have an interest in the $4500.00 collection fee and the other costs and expenses that were withheld from the sale proceeds plus the accrued interest that the Court has ordered Smith, Barnes and Johnson to remit to the Chapter 13 Trustee. The Court will direct counsel for Angelo Carpio, Gary Smith, to notify Lydia Carpio and her counsel who is representing her in the dissolution proceedings, who was Bruce Colyer as of March 26, 1997, by letter of the Court's ruling and send each a copy of this Memorandum Opinion. Gary Smith shall send this correspondence to both Lydia Carpio and her counsel by certified mail within seven days of the date this opinion is filed and Smith shall file a certificate of service with this Court. Smith shall also file with this Court the receipt for certified mail for each letter within five days of his receipt of any or both receipts. The Court will allow Lydia Carpio a period of thirty days from the date the first receipt for certified mail is filed with this Court in which to file a motion requesting a hearing for the purpose of presenting evidence before this Court which shows that she has an interest in the $4500.00 collection fee and the other costs and expenses that were withheld from the sale proceeds plus the accrued interest that have been remitted to the Chapter 13 Trustee. In the event Lydia Carpio fails to file such a motion, the Court will consider her to have waived her right to a distribution of any of the foregoing sums remitted to the Chapter 13 Trustee.

### Conclusion

Based on the above discussion, the complaint filed by Angelo Carpio is GRANTED IN PART and DENIED IN PART.

Angelo Carpio's request that the Court void and set aside the sale of the Property to Nevada Investments, LLC is DENIED, however, the bankruptcy estate shall recover the collection fee and all of the costs and expenses of the foreclosure sale that were withheld from the sale proceeds plus interest. Angelo Carpio's request for damages pursuant to 11 U.S.C. § 362(h) is GRANTED.

It is ORDERED that William G. Johnson remit to the Chapter 13 Trustee within twenty days of the date this opinion is filed the $4500.00 collection fee retained by him out of the sale proceeds along with any sums withheld from the sale proceeds that were used for the payment of costs or any other expenses associated with the foreclosure sale, plus the Missouri statutory rate of interest from the date of the foreclosure sale to the date the foregoing sums are remitted to the Chapter 13 Trustee.

It is ORDERED that J.E. Barnes, Jr. remit to the Chapter 13 Trustee within twenty days of the date this opinion is filed any sums withheld from the sale proceeds that were used for the payment of costs or any expenses associated with the foreclosure sale, plus the Missouri statutory rate of interest from the date of the foreclosure sale to the date the foregoing sums are remitted to the Chapter 13 Trustee.

It is ORDERED that in the event William G. Johnson and/or J.E. Barnes, Jr. fail to remit the foregoing sums to the Chapter 13 Trustee, Bonnie M. Smith shall remit to the Chapter 13 Trustee within ten days of the expiration of the twenty-day period in which Johnson and Barnes were ordered to comply, the $4500.00 collection fee retained by Johnson out of the sale proceeds along with any sums withheld from the sale proceeds by either Johnson or Barnes that were used for the payment of costs or any other expenses associated with the foreclosure sale, plus the Missouri statutory rate of interest from the date of the foreclosure sale to the date the foregoing sums are remitted to the Chapter 13 Trustee.

It is ORDERED that Bonnie M. Smith shall remit to Gary W. Smith within twenty days of the date this opinion is filed the sum of $750.00 for the reasonable attorney's fees incurred by Angelo Carpio plus the costs incurred by Angelo Carpio in the prosecution of this adversary proceeding.

It is ORDERED that Bonnie M. Smith shall remit to Angelo Carpio within twenty days of the date this opinion is filed the sum of $1000.00 for punitive damages for her willful and flagrant violation of the automatic stay.

It is ORDERED that the Chapter 13 Trustee shall deposit the sums remitted to him from either William G. Johnson, J.E. Barnes Jr., or Bonnie M. Smith in an interest bearing account and hold these sums for a period of at least ninety days from the date the sums are received by the Chapter 13 Trustee. At the expiration of the ninety-day period, the Chapter 13 Trustee shall apply to this Court for permission to distribute the sums remitted to the Chapter 13 Trustee, less the Chapter 13 Trustee's fee, to the creditors of Angelo Carpio. The Court will review the file and determine if such distribution would be appropriate at that time.

It is ORDERED that Gary W. Smith notify Lydia Carpio and her counsel who is representing her in the dissolution proceedings, who was Bruce Colyer as of March 26, 1997, by letter of the Court's ruling and send each a copy of this Memorandum Opinion. Gary W. Smith shall send this correspondence to both Lydia Carpio and her counsel by certified mail within seven days of the date this opinion is filed and Gary Smith shall file a certificate of service with this Court. Gary W. Smith shall also file with this Court the receipt for certified mail for each letter within five days of his receipt of any or both receipts.

The Court will ALLOW Lydia Carpio a period of thirty days from the date the first receipt for certified mail is filed with this Court in which to file a motion requesting a hearing for the purpose of presenting evidence before this Court which shows that she has an interest in the $4500.00 collection fee and other costs and expenses that were withheld from the sale proceeds plus the accrued interest that have been remitted to the Chapter 13 Trustee. In the event Lydia Carpio fails to file such a motion, the Court will consider her to have waived her right to a distribution of any of the foregoing sums remitted to the Chapter 13 Trustee.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Fed. R. Bankr.P. 7052.

So ORDERED.