### In re Cynthia Jean FULMER–VAUGHT, Debtor.

### Bankruptcy No. 97–44905.

United States Bankruptcy Court, W.D. Missouri.

March 20, 1998.

Judith M. Strong, Asst. U.S. Atty., Kansas City, MO.

Barbara Saper Williams, Kansas City, MO, for Debtor.

David C. Stover, Kansas City, MO, for McCulloh Builders.

Richard V. Fink, Kansas City, MO, Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Chief Judge.

On the morning of December 16, 1997, a time which should in bankruptcy proceedings live in infamy, Debtor filed a bankruptcy petition under Chapter 13. Debtor was facing a foreclosure on her real estate by the United States Department of Agriculture, Rural Development. The foreclosure sale was scheduled for the afternoon of December 16, 1997. Counsel for the debtor did not telephone the creditor or counsel for the creditor. Counsel for the debtor did not fax the creditor or counsel for the creditor. Instead, counsel for the debtor mailed the notice of filing bankruptcy to the creditor's office in St. Louis, and to apparently the creditor's counsel in St. Louis.

Needless to say, inasmuch as the creditor had no notice of the bankruptcy filing, the creditor held the foreclosure as scheduled. The United States Department of Agriculture, Rural Development, had made an in-house appraisal and evaluation of the property. After netting out all of the expenses of sale and refurbishing, the Department of Agriculture determined that the fair market value in their opinion was $39,330.00

On December 16, 1997, the Department of Agriculture held the sale and bid $39,330.00. There were a number of other bidders, most participants who testified saying that there were four or five other serious bidders, and 39 separate bids were made at the auction before the property was knocked down for $55,500.00 to McCulloh Builders. Mr. McCulloh testified that he was an experienced builder of homes and that he knew the value of property in the area. It was his testimony that he had perhaps paid more than he should have for the property based on the condition it was in.

The Department of Agriculture subsequently filed a Motion requesting the Court to lift the automatic stay retroactive to before the time and date of the filing of the bankruptcy petition. The Department also wants the Court to ratify the foreclosure on the real estate property of the debtor and a hearing was held on February 24, 1998.

The Court recently faced a similar situation in the case of *In re Carpio*, 213 B.R. 744 (Bankr.W.D.Mo.1997), where bankruptcy was filed minutes before the foreclosure sale was conducted but notice of the filing was communicated to the attorney representing the holder of the note and deed of trust. Just as in that case, in this case also, the Court is faced with two issues. First, does the filing of the Petition make void any foreclosure action taken subsequent to the filing of the Petition without Court approval? The second issue the Court must face is the problem of 11 U.S.C. § 549(c) which provides:

(C) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

11 U.S.C. § 549(c). Just as in the *Carpio* case, the successful bidder had absolutely no

notice of the bankruptcy, nor did any other party have any notice of the bankruptcy, other than the debtor and the debtor's counsel.

Likewise, in this case, as in the *Carpio* case, there were no documents filed in the office where a transfer of real property may be recorded to perfect such transfer. The only question left then for the Court is whether the transfer to the good faith purchaser was for a "present fair equivalent value."

 The Court believes that the price bid and offered by McCulloh is the fair equivalent value. The Court has two reasons for such a belief. The first of these is that there were some half dozen or slightly less actual bidders at the auction. Thirty-nine bids were made before the property was finally knocked down. Those bids raised the value from the $39,330.00 which the Department of Agriculture felt was the fair market value to $55,500.00. It would seem to the Court that when you have that many bidders and that much increase, that the fair market value has been determined by the auction itself. If any one of the five persons bidding had felt the property had a fair market value in excess of $55,500.00, the Court anticipates that a further bid would have been made. The second prong of the Court's reasoning rests on a United States Supreme Court case, i.e., *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). In that case, the Court indicated that a "reasonably equivalent value" was deemed to have been paid when a regularly conducted, without collusion, foreclosure was held. Granted, reasonable equivalent value is not the same as fair market value, and of course we are talking about § 549 in the instant case whereas the Supreme Court was considering § 548 in the *BFP* case. Nevertheless, I think the Court's decision in *BFP* is certainly indicative of the weight to be given to a regularly conducted foreclosure where the holder of the note is not the purchaser.

Accordingly, the sale of the real estate to McCulloh Builders is approved and the automatic stay is retroactively lifted to permit the foreclosure to be valid and legal.

 Although it is not necessary to this decision, the Court believes that it should

mention that it believes, as it did in *Carpio*, that a foreclosure subsequent to the filing of the bankruptcy is void rather than voidable, but that § 549(c) preserves the purchase by the innocent purchaser in this case.

 Finally, the Court is going to publish this decision for only one reason. In the twelve years this author has been on the Bench, there had never been a § 549(c) question raised in front of this judge. However, since the *Carpio* case, two further § 549(c) questions have arisen in this Court and the judge feels that it is essential to emphasize the obligations of counsel for a debtor when filing bankruptcy. The obligation is to notify the creditor who is going to foreclose immediately by the most expeditious means of communication available. That means telephone, telegraph, fax, e-mail, or whatever is required to notify prior to the foreclosure or at least prior to the conclusion of the foreclosure sale. This judge feels so strongly about this situation that this case is published to warn counsel for debtors that in the future, failure to do so may well result in sanctions against debtors' counsel for creating a problem which is not at all necessary or appropriate.

The foregoing Memorandum Opinion constituted Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.