# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3651

_____

In re: Jeffrey L. Miller,       *
      *
           Debtor.       *
      *
Jeffrey L. Miller,       *
      *   Appeal from the United States
           Plaintiff - Appellee,       *   District Court for the District of
      *   Nebraska.
           v.       *
      *
NLVK, LLC, a Nevada limited       *
liability company,       *
      *
           Defendant - Appellant.       *

_____

Submitted: April 19, 2006
Filed: July 21, 2006

_____

Before MURPHY, MELLOY, and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

At a foreclosure sale, NLVK, LLC ("NLVK") purchased a property that had been owned by Jeffrey Miller. Unbeknownst to NLVK, Miller had declared bankruptcy prior to the sale. The district court granted Miller's request to set aside the property transfer. We reverse and remand.

## I.

Miller purchased real property in Las Vegas, Nevada, on September 20, 2001. He took out a secured mortgage for $495,150 with the New Freedom Mortgage Corporation ("NFMC"). Miller subsequently failed to pay the required dues to his homeowner's association, Rhodes Ranch Association (the "Association").

On September 3, 2003, Miller filed for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the District of Nebraska. Miller neither listed the Association as a creditor on any of his bankruptcy filings nor filed a notice of bankruptcy with the county real estate office in Nevada.

On October 10, 2003, NLVK purchased the property at a foreclosure auction for $3,847. That was the amount Miller owed the Association in past dues and foreclosure costs at the time that the property was sold. At the time of the purchase, the balance on the mortgage was approximately $463,000.[1] The record is unclear as to whether there were additional liens on the property inferior to the mortgage. Miller asserts that the property was worth $630,000 to $650,000 at the time of the foreclosure sale. NLVK properly recorded its purchase on October 22, 2003.

On March 10, 2004, Miller amended his bankruptcy schedule to include the debt to the Association and filed an Adversary Complaint to Recover Property in the bankruptcy court against NLVK and the Association. He alleged that the sale violated the automatic stay provisions of 11 U.S.C. § 362 and sought to set aside the real estate transfer pursuant to 11 U.S.C. § 549(a).

---

[1]The bankruptcy court assumed the total secured debt on the property was approximately $500,000 with the addition of unpaid real estate taxes added to the mortgage balance.

The bankruptcy court found no violation of the automatic stay, but set aside the transfer. It determined that prior liens on the property, including the mortgage, should not be considered in determining fair equivalent value because NLVK had not assumed the mortgage or other liens. It then found that the payment of $3,847 did not constitute "present fair equivalent value" and, thus, NLVK was not entitled to the safe harbor provisions of 11 U.S.C. § 549(c). NLVK's appeal was heard by the United States District Court for the District of Nebraska. The district court found that "the bankruptcy judge committed no error in setting aside the post-petition sale of the property to NLVK." NLVK timely appealed.

## II.

In a bankruptcy matter, we review the bankruptcy court's factual conclusions for clear error and its legal conclusions de novo. In re Wick, 276 F.3d 412, 415 (8th Cir. 2002).

The foreclosure sale on Miller's property occurred after Miller filed for bankruptcy. Accordingly, the bankruptcy trustee could generally avoid the property transfer pursuant to 11 U.S.C. § 549(a). NLVK contends, however, that this transfer may not be avoided because it meets the requirements of 11 U.S.C. § 549(c). 11 U.S.C. § 549(c) states:

> The trustee may not avoid under subsection (a) of this section a transfer of an interest in real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of an interest in such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such real property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to such interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than

present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

The disputed issue in this case is whether NLVK paid "present fair equivalent value" for Miller's property. Miller concedes that NLVK meets all of the other requirements for the safe harbor provision.

In BFP v. Resolution Trust Corp., 511 U.S. 531 (1994), the United States Supreme Court discussed the meaning of "reasonably equivalent value" as used in 11 U.S.C. § 548. The Court held that the price paid by a third-party purchaser at a foreclosure sale for real property was the reasonably equivalent value for that property as long as all applicable state laws were complied with. Id. at 545. In T.F. Stone Co. v. Harper, 72 F.3d 466 (5th Cir. 1995), the Fifth Circuit extended the reasoning in BFP to § 549(c). Thus, it applied the Supreme Court's holding from a case involving a pre-bankruptcy petition mortgage foreclosure sale to a post-petition tax foreclosure sale. No other circuit courts have considered this issue, and lower courts have split, with the majority of them rejecting Stone. Compare In re Fulmer-Vaught, 218 B.R. 56 (Bankr. W.D. Mo. 1998) and In re McDonald, 210 B.R. 648 (Bankr. S.D. Fla. 1997) with In re Ford, 296 B.R. 537 (Bankr. N.D. Ga. 2003) and In re Glendenning, 243 B.R. 629, (Bankr. E.D. Pa. 2000).

NLVK urges us to adopt the analysis in Stone. If we were to do so, NLVK would prevail, regardless of how much it paid for the Miller property, because NLVK purchased the property at a foreclosure sale that was conducted in accordance with Nevada law. Upon a careful analysis of Stone, however, we believe that BFP should not be extended to cases dealing with § 549.

Section 549(c) serves as an exception to the automatic stay imposed when a bankruptcy petition is filed, and, as such, it should be construed narrowly. Glendenning, 243 B.R. at 636. Additionally, the phrase "present fair equivalent value" is more exacting than "reasonably equivalent value." Id. ("[M]ost . . . courts that have considered the question [have found] that 'fair present equivalent value' under § 549(c) is not the equivalent of 'reasonable equivalent value' under 11 U.S.C. § 548(a)(2). Instead, the operative terminology of § 549(c) ('fair present') is considerably more exacting than that of § 548(c)(2) ('reasonable'), and for good reason.") "[T]he use of 'present fair' indicates an intent [by Congress] that the protection of § 549(c) be limited to truly innocent purchasers who have actually paid a fair price in the transaction." Ford, 296 B.R. at 553. We also note that the BFP Court took care to limit its holding to "mortgage foreclosures" saying "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." BFP, 511 U.S. at 537 n.3. The foreclosure in this case was not a mortgage foreclosure, but rather one initiated by a homeowners' association.

Because we find that BFP does not control this case, we must analyze the amount paid by NLVK to determine if it constitutes present fair equivalent value. Although NLVK paid only $3,847 for the property, it took the property subject to any pre-existing liens. Golden v. Tomiyasu, 387 P.2d 989 (Nev. 1963). These included, at a minimum, a mortgage of approximately $463,000. We agree with the courts below that purchasing a property subject to a mortgage is not the same thing as assuming the mortgage. It is only when a buyer assumes a mortgage that the buyer becomes legally responsible for its payment. However, we believe that liens on a property are relevant for determining the value paid for that property whether or not those liens are legally assumed by the third-party purchaser.

The following example illustrates our rationale. Consider a piece of real property that has a fair market value of $500,000, but a first mortgage for $450,000 and a second mortgage for $10,000. If a third party purchased the property at a foreclosure sale initiated by the junior lienholder, the property would be subject to the initial $450,000 mortgage. Because the property is worth $500,000 but carries $450,000 in debt, no purchaser would be likely to pay more than $50,000 at a foreclosure sale. If we were to adopt the district court's method of analysis and not consider the liens on the property unless they are assumed or paid off, a third party who purchased the property for $100,000 (well above the level of equity in the property) would still not receive protection under § 549(c) because $100,000 is not the present fair equivalent of the property's fair market value of $500,000.

Whether or not a purchaser chooses to legally assume the mortgage, the purchaser cannot capture any equity in the home until the mortgage is assumed or paid off because the senior lienholder maintains its right to foreclose. Therefore, it is necessary to consider the total amount of all surviving liens on the property when assessing whether NLVK paid present fair equivalent value for the property.

When the value of the liens on the property is considered, the question of whether present fair equivalent value was paid is a much closer question. If the only lien on the property is the mortgage of approximately $463,000, when combined with NLVK's out-of-pocket costs, the value paid for the property is $466,847. Using the range of the property's value provided by Miller, the value paid equals approximately seventy-two to seventy-four percent of the property's value.

Because the courts below did not consider the amount of any liens on the property in determining whether NLVK paid fair market value, those courts did not need to determine the amount of those liens or the value of the property with specificity. The courts instead made assumptions about the amount of the liens and

the value of the property because it was clear that $3,847 could not be the present fair equivalent value of a property whose value was anywhere close to Miller's estimates of $630,000 to $650,000.  Thus, there are no factual findings regarding the exact amount of the total liens on the property or the property's exact value at the time of the foreclosure.

There are assertions in the record that Miller may be over-estimating the value of the property and that there may be liens on the property beyond the mortgage.  Both parties' appellate briefs focused on the questions of whether BFP was controlling and whether pre-existing liens on the property should be considered with assessing whether NLVK paid present fair equivalent value.  Therefore, we cannot ascertain the exact percentage of fair market value that NLVK paid.

At least one court has held that seventy-three percent of fair market value does not rise to the level of present fair equivalent value.  In re Powers, 88 B.R. 294, 297 (Bankr. D. Nev. 1988).  However, this case is not binding.  Additionally, if the value of the property at the time of the foreclosure sale was lower than Miller asserts, or if there are liens on the property in addition to the mortgage, the percentage of fair market value paid by NLVK may be substantially higher.  Accordingly, we remand for the district court to determine in the first instance whether present fair equivalent value was paid for the property when the prior liens on the property are considered.

## III.

For the foregoing reasons, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

———————————————