**In re Robert L. PENFIL and Sylvia L. Penfil, Debtors.**

**Bankruptcy No. 83–00542.**

United States Bankruptcy Court,
E.D. Michigan, S.D.

June 21, 1984.
As Amended July 19, 1984.

Dennis Haley, Flint, Mich., for debtors, Penfil.

Paul R. Gilleran, Troy, Mich., for Michigan Nat. Bank-Detroit.

## AMENDED MEMORANDUM OPINION AND ORDER

ARTHUR J. SPECTOR, Bankruptcy Judge.

Michigan National Bank-Detroit filed a Motion for Relief from Stay and for a declaration of validity of a foreclosure sale. The debtors oppose the motion.

For the purpose of this opinion, the facts are as follows: On or about August 16, 1982, the debtors purchased a home in Farmington Hills, Oakland County, Michigan for $61,900. They borrowed the entire purchase price from Michigan National Bank-Detroit and granted it a mortgage thereon. The appraised value of the home at that time was $69,000. Almost immediately thereafter, the debtors defaulted in their monthly payment. On February 21, 1984, the bank accelerated the balance owing of $61,881.99 together with the accrued interest of $3,609.20 and late charges of $250.48. After attempts to negotiate a settlement and refinancing of the debt proved unsuccessful, the bank commenced foreclosure proceedings, allowed under the power of sale clause in the mortgage. The bank advertised the sale for four consecutive weeks, and after a two-week adjournment of the sale, granted by the bank at the request of the debtors, the Oakland County Sheriff sold the property at a foreclosure sale. The sale commenced at 10:00 a.m. on June 17, 1983. At that precise moment, the debtors filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code at the Bankruptcy Courthouse in Flint, Genesee County, Michigan. The bank had no actual knowledge of the filing of the petition for relief, but was informed by the debtors the night before that they intended to file such a petition the morning

of June 17, 1984 and therefore, that the sale should not be held. The bank bid in $67,178.26 and was the buyer at the sale for that price. The Sheriff's deed was recorded at 11:03 a.m. that same day. At no time relevant to this case was a copy of the petition for relief ever recorded at the Register of Deeds office in Oakland County, Michigan.

The debtors' schedules listed the value of the home at $75,000 and the debt against it at $65,676.52. In their response to the motion, however, they allege that the value of the home is $85,000. The debtors do not live in the home; the only occupant is the mother of debtor, Sylvia L. Penfil. Since March 4, 1984, no payments have been made to the bank, and $825.05 in property taxes were paid by the bank. In addition, $950.00 in condominium assessments have not been paid and are now a lien on the premises.

The bank maintains that the foreclosure sale was valid and not affected by the automatic stay of § 362(a) of the Code, which arose at 10:00 a.m. on June 17, 1983. It maintains that the "foreclosure actually began on the first publication of the notice of sale on April 29, 1983. The act of said Sheriff's sale simply being a ministerial act within the overall scope of the total mortgage foreclosure which, ... is not the type of act encompassed within the broad scope of the automatic stay ...." From there, the bank argues that since the sale actually commenced in April, when the first notice was published, the only thing the stay could relate to was the redemption period. It then explains that most courts, including those in this district, have held that the stay does not extend the debtor's right to redeem after a mortgage foreclosure sale.

Such reasoning is specious. The mere publication of a notice of foreclosure sale is simply not the equivalent of the sale itself. The first step in a process which takes a minimum of one month to complete simply does not equal the completion of the entire process. The stay acts to stop each act along the route to the completion of the process. Therefore, the mere recording of

a Sheriff's deed after a foreclosure sale is, in and of itself, a violation of the automatic stay of § 362(a) since it is "an act to ... enforce any lien against property of the estate." *In re Bernard,* 21 B.R. 287 (Bkrtcy.E.D.Pa.1982); *In re Wilson,* 19 B.R. 45 (Bkrtcy.E.D.Pa.1982); *In re Murphy,* 22 B.R. 663, 7 C.B.C.2d 74 (Bkrtcy.D. Colo.1982); *In re Jenkins,* 19 B.R. 105, 6 C.B.C.2d 677 (D.Colo.1982). Therefore, the recording of the Sheriff's deed in this case which occurred 1 hour and 3 minutes after the stay arose was a violation of the automatic stay.

The bank also argues that even if the acts occurred post-petition, § 549(c) of the Code protects its title to the premises from attack by the trustee. Section 549 provides generally that post-petition transfers of property of the estate are avoidable by the trustee, but makes the following exception:

"(c) The trustee may not avoid under subsection (a) of this section a transfer, to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value or to a purchaser at a judicial sale of real property located other than in the county in which the case is commenced, unless a copy of the petition was filed in the office where conveyances of real property in such county are recorded before such transfer was so far perfected that a bona fide purchaser of such property against whom applicable law permits such transfer to be perfected can not acquire an interest that is superior to the interest of such good faith or judicial sale purchaser."

Since the premises in question are located in a county outside of the county in which the Bankruptcy Court is located, and since the bank recorded its Sheriff's deed prior to the recordation of a copy of the petition, it claims the protection of § 549(c).

Bankruptcy Code § 549(c) is substantially derived from § 21g of the Bankruptcy Act of 1898, as amended. That section defined what is now termed "judicial sale" as "[t]he exercise by any court of ... any State of jurisdiction to authorize or effect a

judicial sale of real property ...." The term "judicial sale" has also been defined as "a sale conducted under a judgment, order, or supervision of a court ...." Black's Law Dictionary (Revised 5th edition 1979). It has also been described as a sale "made under the process of a court having competent authority to order it ..." 14 Michigan Law and Practice, Judicial Sales, § 1 (1957). Michigan provides two statutory methods for foreclosure: one is colloquially called "judicial foreclosure", and is codified at M.C.L. 600.3101 *et seq.;* M.S.A. 27A.3101 *et seq.;* the other is captioned "Foreclosure of Mortgages by Advertisement", and is codified at M.C.L. 600.3201 *et seq.;* M.S.A. 27A.3201 *et seq.* Case law under the Foreclosure of Mortgages by Advertisement statute clearly hold that "a foreclosure under the statute is an act of the party, and *not a judicial proceeding." Lariverre v. Rains,* 112 Mich. 276, 282, 70 N.W. 583 (1897); *Guardian Depositors Corp. v. Powers,* 296 Mich. 553, 296 N.W. 675 (1941). *Also see Northrip v. Federal National Mortgage Ass'n.,* 527 F.2d 23, 25, n. 1 (6th Cir.1975); *Cramer v. Metropolitan Savings and Loan Ass'n.,* 401 Mich. 252, 258 N.W.2d 20 (1977); *National Airport Corp. v. Wayne Bank,* 73 Mich.App. 572, 252 N.W.2d 519 (1977).

■ The problem with the bank's argument is that it purchased the property at a foreclosure sale conducted pursuant to its contractual power of sale under the Michigan "Foreclosure of Mortgages by Advertisement" act and not under the act providing for "judicial foreclosure". No court ever authorized or effected the sale in this case. No court conducted or supervised the sale, and the sale was made other than under the process of a court having competent authority to order it. Under any definition, then, the foreclosure sale in this case was not a "judicial sale". Accordingly, the bank is not entitled to the protection of § 549(c) as a "purchaser at a judicial sale".

■ The bank half-heartedly argues that even if the Court were unwilling to find it to be a purchaser at a judicial sale, it is entitled to the protection of § 549(c) in its capacity as "a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value". The debtors argue that the bank had notice of the commencement of the case by their notification the evening *before* the filing. This was not notification of the *commencement* of the case; merely notice of the *intention* to commence the case, and is therefore insufficient to disqualify the bank from use of § 549(c).

■ However, the bank paid no actual money at the foreclosure sale; it merely bid in the amount of the indebtedness owing by the debtors on the mortgage. Although the term "present fair equivalent value" is undefined with respect to this section of the Code, the identical term was utilized in the section of the Bankruptcy Act from which this part of § 549 is derived—Section 70d. The cases which defined that term under the Act held that satisfaction of antecedent indebtedness did not qualify as present fair equivalent value. See 4B Collier on Bankruptcy, ¶ 70.-68[4], 4 Collier on Bankruptcy, ¶ 67.41[4], page (14th ed. 1898). One commentator states that "value" under the Code does not include "satisfaction ... of a pre-petition debt". 4 Collier on Bankruptcy, ¶ 549.-03[1], (15th ed. 1979).

■ Moreover, that part of § 549(c) which protects bona fide purchasers other than purchasers at judicial sales was enacted to protect innocent parties who are defrauded by the debtor post-petition. See 2 Collier on Bankruptcy, ¶ 21.30, (14th ed. 1898). With respect to § 21g, which is the predecessor of the notice part of § 549(c) of the Bankruptcy Code, the commentator said:

"Its purpose is apparent. Where real estate of the bankrupt or in which the bankrupt has an interest is located outside of the county in which the bankruptcy proceeding is pending, it is possible for a fraudulent bankrupt to sell the real estate, or his interest therein, to an innocent purchaser, who has no knowledge,

or reasonable means of knowledge of the pendency of the bankruptcy proceeding. In order to lessen the opportunity for such fraud, this subdivision permits recordation of the petition with the schedules omitted, of the decree of adjudication ... by anyone who has an interest in the estate ...''

Obviously, foreclosing mortgagees are not the intended beneficiaries. For these reasons, a foreclosing mortgagee can not claim to have parted with the present fair equivalent value necessary to give it protection under this part of § 549(c).

The bank also claims that it is entitled to a lifting of the stay to enable it to perfect its mortgage lien on the premises at this time. In light of the debtors' assertion of substantial equity in the premises and the pendency of their Chapter 11 case, the resolution of that issue must await trial.

Therefore, for the reasons stated above, the bank's Motion for Relief from Stay is set for hearing, but its request for a declaration of validity of its June 17, 1983 foreclosure sale is DENIED.

IT IS SO ORDERED.