**In re Rhonda L. MAJOR, Debtor.**

**Bankruptcy No. 98–40159–2–7.**

United States Bankruptcy Court,
W.D. Missouri.

March 24, 1998.

Rhonda L. Major, Debtor pro se.

Alan E. South, Kansas City, MO, for Regional Investment Company.

Aunna L. Peoples, Kansas City, MO, Chapter 7 Trustee.

### ORDER DENYING MOTION FOR ORDER RATIFYING SUBSTITUTE TRUSTEE'S SALE AND ANNULLING THE AUTOMATIC STAY

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the motion of Regional Investment Company ("Regional") requesting that the Court ratify the sale by its foreclosure trustee of property owned by the debtor, Rhonda L. Major ("Major"), and annul the automatic stay as to that property. For the following reasons the Court denies Regional's motion.

#### Facts

On February 12, 1991, Rhonda L. Major executed a promissory note in the amount of $39,444.00 in favor of Regional for the property (hereinafter "Property") described as:

7909 E. 57th Street, Raytown, Missouri, the same being legally described as LOT 5, INFRANCA'S SUBDIVISION, A SUBDIVISION IN KANSAS CITY, JACKSON COUNTY, MISSOURI, ACCORDING TO THE RECORDED PLAT THEREOF.

The promissory note was secured by a deed of trust entered into between Major and Regional.

Major used the Property primarily as rental income property and used the proceeds from rent to make the payments to Regional. Generally, Major expected the tenant to keep the house in proper condition, making repairs as necessary.

In May 1997, Major fell behind in her payments to Regional. It appears, from the pleadings in this matter, that Major and Regional attempted unsuccessfully to work out an arrangement that would allow Major to pay the attorney fees due at that time, and to pay an amount equal to one and a half times the note payment each month until the arrearage was paid in full. It also appears that Major offered Regional a Deed in Lieu of Foreclosure as guarantee, but Regional turned down this offer.

Regional declared the unpaid principal amount of $37,536.36 due and began foreclosure on the deed of trust. The Substitute Trustee scheduled the foreclosure sale for January 15, 1998. Major contends that Regional notified the tenants residing in the Property of the pending sale. These tenants vacated the premises, leaving rents of $1100.00 owing.

On January 14, 1998, Major contacted Regional and requested that the sale be postponed. She explained that funds from a 401K plan had become available for withdrawal on January 1, 1998. She advised Regional that it would take a short period of time—a week or two—to withdraw the funds and asked that she be given the opportunity to obtain the funds and to bring her account with Regional current. According to Major's pleading, Regional advised that the foreclosure sale could only be stopped by payment in full of all arrearages plus attorney fees of $1462.00. Major was unable to make such payments prior to the scheduled sale of the Property.

On January 15, 1998, Regional's Substitute Trustee conducted the foreclosure sale—as was its right—in compliance with the laws of

the State of Missouri. Regional successfully bid on the Property in the amount of $42,-469.59. The record does not contain information on the time of the foreclosure sale.

Also on January 15, 1998, at 10:50 a.m., Major filed *pro se* an emergency quick-file petition under Chapter 7 of the Bankruptcy Code. There is nothing in the record to indicate that Major attempted to contact Regional to advise them of the bankruptcy filing. In its motion, Regional claims that it was not notified of the bankruptcy action until January 20, 1998. In her Chapter 7 petition, Major listed her residential address as 7909 E. 57th Street, Raytown, Missouri (the address of the Property in question), and a mailing address of 5048 Glenside Court, Kansas City, Missouri.

On January 26, 1998, Regional filed a Proof of Claim in this case, claiming a security interest in the Property. In its Proof of Claim, Regional claimed a principal balance due of $37,536.36 and arrearages of $4606.02. The arrearages were composed of delinquent payments from May 1, 1997, through January 31, 1998, in the amount of $331.67 per month; late charges in the amount of $161.16; and miscellaneous costs in the amount of $1459.83.

On January 29, 1998, Regional filed the instant action seeking ratification of the Substitute Trustee's sale and annulment of the automatic stay. Regional states that the foreclosure sale "was not a willful violation of the automatic stay . . . and that the . . . sale should be affirmed so as to avoid unnecessary delay and increased costs which would result if the . . . sale were set aside and rescheduled after relief from the automatic stay could be obtained." Regional asked the Court to ratify the sale and annul the automatic stay "so that it may record its Trustee's Deed under Sale and grant relief under § 362(d) to obtain possession of the property in accordance with terms of the deed."

On February 13, 1998, Major filed an answer to Regional's motion and asked this Court to annul the Substitute Trustee's sale and to keep the automatic stay in place. After the hearing held on February 21, 1998, the Court took the matter under advisement. The Court is now ready to rule.

### Discussion

■ Section 362(a)(3) of the Bankruptcy Code provides that a petition in bankruptcy "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). This Court has previously held, and continues in its belief, that actions taken in violation of the automatic stay are void *ab initio*. Just last year, in *In re Carpio*, 213 B.R. 744 (Bankr.W.D.Mo.1997), this Court discussed at length its view of the automatic stay. *Id.* at 748–49.

Because the automatic stay is at the very heart of the Bankruptcy Code, courts are generally very unwilling to turn a blind eye to violations of the automatic stay. The Code does provide, however, a mechanism for negating such a violation. Section 362(d)[1] allows a court to annul the automatic stay under certain circumstances, including for cause. 11 U.S.C. § 362(d)(1).

■ An annulment serves to provide retroactive relief from the automatic stay. *In re Formisano*, 148 B.R. 217, 222 (Bankr. D.N.J.1992). In *New Orleans Airport Motel Associates, Ltd. v. Lee (In re Servico, Inc.)*, 144 B.R. 933, 935 (Bankr.S.D.Fla.1992), the court stated, "When the stay is annulled, the act which would have been in violation of the stay is permitted. . . . [W]hen the stay is annulled there is no violation of the stay." Further, "[t]he effect of annulling the stay is to negate its existence in its entirety." *In re Lampkin*, 116 B.R. 450, 453

---

1. 11 U.S.C. § 362(d) provides in part:
   On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section as by terminating, annulling, modifying, or conditioning such stay—

   (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

(Bankr.D.Md.1990)(citing *In re Albany Partners*, 749 F.2d 670 (11th Cir.1984)).

### A. The requirements of § 362(d) have not been met.

■ This Court does not find that Regional has met the requirements of § 362(d)(1). Regional states that the sale should be affirmed so as to avoid unnecessary delay and increased costs resulting from the sale being "set aside and rescheduled after relief from the automatic stay could be obtained." This Court views Regional's statement as a proffer of "cause" under § 362(d)(1). That assertion is without merit because it concludes that this Court will act in a certain way with regard to a matter not yet before this Court. Specifically, Regional assumes that this Court will undoubtedly grant it relief from the automatic stay in the event the Court now voids the sale that took place January 15, 1998. Not having the benefit of supportive evidence that would surely accompany Regional's Motion to Lift the Automatic Stay, if and when Regional files such a motion, the Court cannot say, at this time, how it would rule. This Court, therefore, does not find cause sufficient to meet the requirements of § 362(d)(1).

Although Regional does not specifically claim lack of adequate protection of the Property as a "cause" in support of its § 362(d) motion, in the Court's view there is nothing to indicate Regional's interest in the Property is not adequately protected. Major states in her Answer that during the time she used the Property for rental purposes, the tenants maintained the Property and performed necessary repairs. Further, she states that she "was in the process of moving back into the property once the tenant had vacated." From this it appears to the Court that there is adequate physical protection for the Property—Major has maintained the

Property in the past and will, in the future, reside there herself. Additionally, Regional finds adequate financial protection in its Deed of Trust on the Property. Regional has not presented this Court with any reason to believe that it does not have adequate protection for its interest in the Property.

Finally, Regional has failed to plead any of the elements of section 362(d)(2) in its motion. Accordingly, relief is not available to Regional under that subsection of section 362(d).

### B. Regional Investment Company does not meet the requirements of § 549(c).

■ This Court notes that § 549(c)[2] provides relief for good faith purchasers of real property. It appears to the Court that even though Regional couches its request for relief under 11 U.S.C. § 362(d), Regional in reality is seeking relief under 11 U.S.C. § 549(c). In its motion, Regional has addressed the elements of a § 549(c) matter. The Court will use Regional's motion for ratification together with its Proof of Claim for analysis under § 549(c).

Bankruptcy Rule 6001 provides that "Any entity asserting the validity of a transfer under § 549 of the Code shall have the burden of proof." Fed. R. Bankr.P. 6001. *See also, Bryant v. Woodland (In re Bryant)*, 103 B.R. 95, 101 (Bankr.E.D.Pa.1989); *In re Watson*, 65 B.R. 9, 11 (Bankr.C.D.Ill.1986). Here, Regional must show that it meets the requirements set out in § 549(c).

Section 549 gives the bankruptcy trustee the power to avoid post-petition transfers of property of the estate. However, under § 549(c), a transfer may not be avoided if the following criteria are met:

(1) There was a transfer of real estate to a good faith purchaser who was without

---

**2.** 11 U.S.C. § 549(c) provides:

The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property,

against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

knowledge of the commencement of the case;

(2) The purchase was made for fair, equivalent value;

(3) No copy of the debtor's bankruptcy petition was filed in the office where conveyances of real property are to be recorded.

*In re King,* 35 B.R. 530, 533 (Bankr.N.D.Ga. 1983).

In beginning its analysis under § 549(c), the Court first examines Regional's bid on the Property: $42,469.59. In accordance with Mo.Rev.Stat. § 443.360 (1986) the Substitute Trustee would be able collect $247.35 of the $42,469.59 amount as commission on the sale.[3] After subtracting out the Trustee's commission, there is a balance due to Regional in the amount of $42,222.24. In its Proof of Claim filed with this Court on January 26, 1998, Regional claimed $37,536.36 in principal plus $4606.02 in arrearages, late fees and miscellaneous other fees. Regional's total claim, therefore, is $42,142.38—a *de minimis* difference of $79.86. In all likelihood, this small amount would have been eaten up by other expenses such as advertising the foreclosure sale. For this reason the Court finds that Regional merely bid what it was owed. This fact is not without significant importance.

In *Purnell v. Citicorp Homeowners Services, Inc.* (*In re Purnell*), 92 B.R. 625 (Bankr.E.D.Pa.1988), Citicorp obtained a default judgment, in the amount of $56,116.73, against Purnell based on a promissory note secured by a piece of property. The property was a duplex in which Purnell lived in one half and rented out the other half. Approximately one week before the scheduled foreclosure sale, Purnell filed a voluntary Chapter 13 petition. Notice of the petition did not, however, reach Citicorp until after the foreclosure sale. At the foreclosure sale, Citicorp bid in its judgment plus the statutory nominal consideration of $1.00. The Court found that Citicorp "did not pay any new value at the sale, other than the recorded minimal consideration of one dollar." *Id.*

at 630. This finding was important to the Court because:

> As section 549(c) speaks of bona fide purchasers paying "present fair equivalent value", the satisfaction of an antecedent debt has not been viewed as "present value." *In re Shepherd,* 12 B.R. 151, 154 (E.D.Pa.1981); *In re Penfil,* 40 B.R. 474, 477 (Bankr.E.D.Mich.1984). Not only is it textually difficult to envision foreclosing mortgagees as falling within the "present value" requirement of § 549(c), the intent of this subsection is not to protect mortgagees at a foreclosure sale.

*Id.* The idea that satisfaction of antecedent debt is not "present fair equivalent value" is well established in bankruptcy, as shown by the court in *In re Penfil,* 40 B.R. 474 (Bankr. E.D.Mich.1984):

> Although the term "present fair equivalent value" is undefined with respect to [ § 549(c)], the identical term was utilized in the section of the Bankruptcy Act from which this part of § 549 is derived—Section 70d. The cases which defined that term under the Act held that satisfaction of antecedent indebtedness did not qualify as present fair equivalent value. *See* 4B Collier on Bankruptcy, ¶ 70.68[4], 4 Collier on Bankruptcy, ¶ 67.41[4], page (14th ed. 1898). One commentator states that "value" under the Code does not include "satisfaction … of a pre-petition debt." 4 Collier on Bankruptcy, ¶ 549.03[1], (15th ed.1979).

*Penfil,* 40 B.R. at 477.

In *Purnell,* the court declined to include foreclosing mortgagees within the scope of § 549(c). The court was especially concerned that allowing foreclosing mortgagees within § 549(c)'s scope would have a serious effect on the automatic stay provision. The court, quoting Rochelle & Feder, *Unauthorized Sales of a Debtor's Property: The Rights of a Purchaser under Section 549 of the Bankruptcy Code,* 57 Am. Bankr.L.J. 23, 35, n. 60 (Winter 1983), opined, "[S]ection 549(c) requires protecting the purchaser, not

---

**3.** Mo.Rev.Stat. § 443.360 provides that a commission shall be calculated as two percent on the first $1000.00, plus one percent on the amount

between $1000.00 and $5000.00, plus 1/2 of one percent on the remaining amount.

the foreclosing trustee. Thus neither the mortgagee nor its nominee may claim the protection of section 549(c) if either one bids in the property at a foreclosure sale." *Purnell*, 92 B.R. at 630. The court continued:

> To protect mortgagees at foreclosure sales in effect alters § 362(a) so that the automatic stay only becomes effective upon actual or constructive notice to the creditor. Given the significant purposes of the automatic stay, the requirement of notice would weaken this central provision. In contrast to the bona fide purchaser who may have expended funds post-petition that are not recoverable, the legitimate concerns of the mortgagee acting in ignorance of the bankruptcy filing may be protected by concluding that its actions are not in contempt and that it may recover, as a secured claim, any postpetition expenditures incurred prior to learning of the bankruptcy. In addition, by permitting the automatic stay to be "annulled," § 362(a) allows a bankruptcy court to validate the mortgagee's postpetition actions in those exceptional instances where it would be inequitable to vacate the transfer.

*Id.* (citations omitted).

■ This Court finds very persuasive the reasoning of the *Penfil* and *Purnell* courts that § 549(c) was not intended to protect foreclosing mortgagees. Absent a showing that there are exceptional circumstances, this Court will vacate a foreclosure sale where the foreclosing mortgagee or its nominee is the successful bidder. This Court especially finds disfavor in claims of "present fair equivalent value" by a mortgagee who has bid in only the amount of the debtor's prepetition indebtedness.

Because Regional was a foreclosing mortgagee who bid in only the amount of Major's indebtedness, it does not meet the requirements of § 549(c) and cannot be afforded protection under that section.

■ Assuming *arguendo* that Regional could be classified as a good faith purchaser for present fair equivalent value, this Court notes that Regional still would not meet the requirements of § 549(c) because it failed to perfect the transfer of the Property by recording the Trustee's Deed under Sale.

Section 549(c) obligates the good faith purchaser to "so perfect[] that a [subsequent] bona fide purchaser of such property ... could not acquire an interest that is superior to the interest of the good faith purchaser." In *In re Ward*, 837 F.2d 124 (3d Cir.1988), the Third Circuit Court of Appeals held that evaluation of a claimant's compliance with this provision was an objective inquiry to determine "whether the purchaser has taken the steps necessary under state law to perfect its claim against any hypothetical subsequent bona fide purchaser." *Id.* at 127. The Ninth Circuit adopted this same position in *In re Walker*, 861 F.2d 597 (9th Cir.1988), as did the Fourth Circuit in *In re Konowitz*, 905 F.2d 55 (4th Cir.1990).

In Missouri, title in real estate is perfected by recording of the deed of sale in the County Recorder's Office.[4] Here, there is no doubt that Regional has not perfected under Missouri law. In the very motion now before the Court, Regional asks this Court to issue an order "[r]atifying Substitute Trustee's sale ... so that it may record its Trustee's Deed under Sale." Without recordation, Regional's interest in the Property is not "so perfected that a [subsequent] bona fide purchaser of such property ... could not acquire an interest that is superior to the interest" of Regional. 11 U.S.C. § 549(c).

### Conclusion

Based on the above discussion, Regional Investment Company's Motion for Order Ratifying Substitute Trustee's Sale and Annulling the Automatic Stay is DENIED.

It is ORDERED that Regional Investment Company take any and all steps necessary to reinstate Major's title in the Property to the state it was in prior to the foreclosure sale. Regional may modify its Proof of Claim to include its reasonable expenses associated with the foreclosure sale.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed. R. Bankr.P. 7052.

---

4. Mo.Rev.Stat. §§ 442.380, 442.390 (1986).